**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SABRINA ROYAL, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>MAGIC SPOON INC.<br><br>Defendants. | Case No. ______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sabrina Royal ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorney, brings this Class Action Complaint against Defendant, Magic Spoon Inc., ("Magic Spoon" or "Defendant") for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorney's fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

## NATURE OF THE ACTION

1. This class action challenges Defendant's false and misleading marketing of its Magic Spoon Protein Cereal, which is labeled as containing "0g Total Sugars". The Product is sold at grocery and department stores nationwide, as well as online through the official Magic Spoon website and various other retailers.

2. Magic Spoon Protein Cereal is offered in the following flavors: (A) Fruity; (B) Cocoa; (C) Peanut Butter; (D) Frosted; (E) Blueberry Muffin; (F) Honey Nut; (G) Chocolate Chip Cookie; (H) Birthday Cake; (I) Cinnamon Crunch; (J) Maple Waffle (collectively the "Products"

or "Cereal"). A true copy of the label of one of the Defendant's Products (Chocolate Chip Cookie Cereal) is below:




3. Plaintiff, subclass and class members, who have purchased these Products, bring this Action because of material representations which are false and misleading: Defendant markets and advertises the Products as "0g Total Sugars", "0g Added Sugar" and "No Added Sugar" (collectively, the "**Representations**"). However, unbeknownst to reasonable consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and therefore sugar under the applicable federal and Illinois labeling standards. It is not present in trace amounts; it is the first-listed and predominant ingredient by weight.

4. Defendant's own labeling admits the Products contain five and ten grams of allulose per serving, depending on the flavor. Five to ten grams of sugar per serving is at least ten to twenty times the maximum amount of sugar (less than 0.5 grams) that federal and Illinois law

permit in a product labeled "sugar free" or "0g Total sugar". 21 C.F.R. § 10.60(c)(1)(i). A true copy of the Nutritional Facts for the Flavors Peanut Butter and Fruity Cereals is below[1]:







[1] *See* https://magicspoon.com/products/fruity-keto-cereal-case?selling_plan=3403284542 (last accessed on September 10, 2026).

5. Defendant made its Representations about "0g Total sugar" in its Products in order to induce health-conscious consumers, like Plaintiff, to purchase the Products. But these representations are categorically misleading and false. Images of some of the Products at issue are immediately below:




6. For as long as consumable goods have been sold, "healthwashing," which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy products that either do not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits. To compound matters, the misrepresentations made on the Products are not only potentially harmful but command a price premium consistent with these misrepresentations that Plaintiff and class members would not have paid had they known that Defendant's representations are false and

misleading. The Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause health risks.

7. Against this backdrop, Plaintiff, subclass and class members, on behalf of themselves and all others similarly situated, bring this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's intentional failure to ensure that the Products were distributed, produced, and sold in a manner consistent with advertising. As a result of the foregoing, Plaintiff, subclass and class members (defined below) were harmed by paying a price premium for the Products which they otherwise would not have paid due to the misrepresentations made on the Products' packaging and in advertising or would not have purchased the Products at all.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

9. This Court has personal jurisdiction over the Defendant because the claims asserted in this complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed and/or sold the Product, committed a statutory violation within Illinois related to the allegations made herein, and caused

injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant period. At that time, Defendant was engaged in business activities in Illinois.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District through the promotion, sale, and marketing of the Product in this District. Venue is also proper because Plaintiff resides in this District.

## PARTIES

***Plaintiff Sabrina Royal***

11. Plaintiff, Sabrina Royal, is an individual consumer who, at all times material hereto, is and was a resident and citizen of Chicago, Illinois.

12. Ms. Royal purchased Fruity and Chocolate Chip Cookie Cereals in approximately April 2026, during any statutory limitations period. Plaintiff purchased the products from Walmart in Chicago, Illinois.

13. Accordingly, these representations were part of the basis of Plaintiff's bargains, in that Plaintiff would not have purchased the Products on the same terms had she known that the representations were untrue. Furthermore, in making her purchase, Plaintiff paid a price premium due to Defendant's false and misleading Representations. Plaintiff, however, did not receive the benefit of the bargain because the Products were not, in fact, "0g Total Sugars" products. Instead, they were sweetened predominantly with allulose, a sugar. Had Plaintiff known that Defendant's representations were false and misleading, she would not have purchased the Products or would

have paid substantially less for them. Plaintiff purchased the Products for personal use during the class period. Plaintiff bought the Product because she relied on Defendant's representations including that the Product contained 0g Total Sugars. The Products are sold at a price premium and are more expensive than other snacks. Plaintiff relied on these misrepresentations—and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products.

14. Plaintiff remains interested in purchasing snacks and other products that truly have 0g Total Sugars. However, she cannot know for certain whether the false labeling and marketing of the Products have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

***Defendant Magic Spoon Inc.***

15. Defendant Magic Spoon Inc. is a Delaware corporation and is headquartered in New York, New York. Upon information and belief, Defendant controls the entire line of Product, presiding over its recipes, labeling, and marketing.

16. Defendant sells the Product throughout the United States, including Illinois. The Magic Spoon Cereals labeled "0g Total sugar" products, including those purchased by Plaintiff and the proposed class members, are available at various retail and grocery stores throughout the United States, including Illinois. Defendant authorized the false, misleading, and deceptive

marketing, advertising, distribution, and sale of the "0g Total sugar" Products to consumers nationwide, including Illinois.

## COMMON FACTUAL ALLEGATIONS

### Consumers Seek Out and Pay More for Products That Contain No Sugars

17. It is well known that consuming added sugar can present a variety of dangerous health conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right amount of added sugar" is "[a]s little as possible."[2] Sugar-sweetened beverages are by far the top source of added sugars for Americans.[3]

18. For decades, federal health authorities have recommended limiting added sugar intake.[4] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[5]

19. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free" and "0g Total sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they

---

[2] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[3] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, at 43 fig. 1-10 (9th ed. Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf#page=56

[4] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; .S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

[5] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.

believe will most motivate a purchase.

20. Defendant has capitalized on that demand. It markets Products whose predominant ingredient is allulose, a sugar, while labeling and advertising them as "0g Total sugar." Defendant thereby obtained an unfair competitive advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

**Defendant's False and Misleading Representations**

21. Defendant manufactures, markets, and sells its Cereals labeled as "0g Total sugar" products. In addition, "Magic Spoon is a food company, not a technology company, specializing in high-protein, low-sugar, grain-free cereals that mimic nostalgic childhood flavors for health-conscious adults".[6]

22. The Products are sold at major retailers throughout Illinois and the United States, including Target, Walmart, and grocery stores:

> "It serves consumers seeking keto-friendly, nutritious breakfast alternatives to traditional sugary cereals, solving the problem of post-breakfast energy crashes with clinically-backed, protein-packed products sold initially direct-to-consumer (DTC) online and now in over 7,000 retail locations like Target and Sprouts.[7]"

23. Below are illustrative samples of the Products and Representations of Walmart online:

[6] *See* https://startupintros.com/orgs/magic-spoon (last accessed on September 10, 2026).
[7] *Id*.




24. On the front label of the Products, Defendant prominently represents that the Products are "0g Total Sugar." For certain variants, Defendant discloses on the back of the packaging that the Products contain "8g Allulose Per Serving," while other variants disclose "10g Allulose Per Serving."

25. Defendant also labels the back-packaging of the Products with an explanation of "Why [it's] special," including a chart that states its "total sugars" or "sugar" as being "0g." The back label claims for each Product are depicted below:






26. The Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "0g Total Sugar," "Zero Sugar," and "0 Sugar," and federal and Illinois law prescribe an objective standard governing when those

terms may be used.

27. "0g Total Sugar" is an absolute, objective, and quantitative claim concerning a measurable physical attribute of the Products. Federal law permits that claim only when a product contains less than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, together with the regulation's other requirements. The Products' "0g" Nutrition Facts declarations further reinforce the no-sugar message to consumers, making it impossible for consumers to discover that the Products do, in fact, contain sugar.

**Allulose Is a Sugar**

28. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[8] No such rulemaking ever occurred.

29. In *Franco v. Chobani, LLC*, the Seventh Circuit recently confirmed that allulose is a sugar under federal labeling regulations. No. 25-2087, 2026 WL 2150193 (7th Cir. July 27, 2026). The court explained that 21 C.F.R. § 101.9(c)(6)(ii) defines "Total Sugars" as the sum of all free mono- and disaccharides and, because allulose is undisputedly a monosaccharide, it falls squarely within that definition. Accordingly, under the governing federal regulations, allulose is a sugar.

30. The industry also recognizes that allulose is a sugar. Indeed, one of the most predominant manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is

[8] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

a monosaccharide, or simple sugar"[9] and has noted in multiple FDA filings that "Allulose is a monosaccharide and is classified as a sugar."[10] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[11]

31. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[12] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[13]

32. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 *et seq*. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

33. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim.

---

[9] *Tate & Lyle Study*, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

[10] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[11] *See, e.g.*, *Cleveland Clinic, What You Need To Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

[12] *Memorandum from Center for Science in the Public Interest to Food and Drug Administration* (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf

[13] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

21 C.F.R. § 101.13(c). By contrast, Defendant's separate "0g Total Sugar," "Zero Sugar," and "0 Sugar" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

34. The "0g Total Sugar" statement on the Products' packages and other labeling is a nutrient-content claim because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

35. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . ..").

36. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "0g Total sugar" nutrient content claims at issue in this case. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

> (i) The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving...; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

37. 21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive; each must be satisfied.

38. The Products do not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. The allulose in the Products must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

39. By Defendant's own admission on the Products' labels, each serving of the Products contains either five or ten grams of allulose, depending on the variant. Those amounts of sugar, by themselves, are at least twenty times the FDA's threshold for labeling a product "sugar free" or "0g Total sugar" under section 101.60(c)(1)(i). The Products therefore cannot lawfully bear the Representations.

40. Defendant's "adds a dietarily insignificant amount of sugar" disclaimer does not save the claims. The disclaimer option under section 101.60(c)(1)(ii) is available only where the independent under-0.5-gram requirement of section 101.60(c)(1)(i) is also met, which it is not.

41. Moreover, at least five or ten grams per serving is not a "trivial," "negligible," or "dietarily insignificant" amount of sugar, so the disclaimer is itself false and misleading.

42. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

43. Plaintiff does not seek to enforce the FDCA directly. Rather, Plaintiff seeks relief under independently enforceable state consumer-protection laws, including Illinois state law

provisions that adopt food-labeling requirements identical to federal requirements. The federal provisions identify the standards Illinois has adopted and the conduct that renders the Products misbranded under Illinois law.

**Defendant's Conduct Violates Illinois' Food Labeling Laws**

44. The Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq., prohibits the misbranding of food sold in Illinois. Under 410 ILCS 620/11(a), "[a] food is misbranded" if "its labeling is false or misleading in any particular."

45. In determining whether labeling or advertising is misleading, Illinois law requires consideration of "not only representations made or suggested by statement, word, design, device, sound or any combination thereof," but also whether the labeling or advertising fails to disclose material facts in light of the representations made. 410 ILCS 620/2.11.

46. The IFDCA also incorporates applicable federal food-labeling regulations into Illinois law. *See* 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation."). Federal regulations provide that "sugars" include "all free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii). Allulose is a monosaccharide and therefore constitutes a sugar under this regulatory definition.

47. Federal regulations further prohibit the use of the terms "0g Total Sugar," "zero sugar," "no sugar," or other terms having the same meaning unless the food contains less than 0.5 grams of sugars per reference amount customarily consumed and per labeled serving. 21 C.F.R. § 101.60(c)(1).

48. Defendant prominently represents on the Products' labeling and packaging that the Products are "0g Total Sugar" and/or contain "Zero Sugar." Those representations are false

and misleading because the Products contain approximately five or ten grams of allulose per serving, depending on the variant—at least twenty times the maximum amount of sugar the 0.5-gram threshold established by 21 C.F.R. § 101.60(c)(1).

49. Defendant's representations are particularly misleading because they expressly communicate to consumers that the Products contain no sugar, when, in fact, they contain multiple grams of allulose, a sugar under the applicable regulatory definition. The Products' labeling therefore misrepresents the nature and sugar content of the Products and fails to disclose material facts necessary to prevent Defendant's "0g Total sugar" representations from misleading consumers. *See* 410 ILCS 620/2.11.

50. Accordingly, because the Products bear "0g Total sugar" nutrient-content claims despite containing approximately eight or thirteen grams of allulose per serving, the Products are misbranded under Illinois law. Defendant's advertising, distribution, and sale of the misbranded Products therefore violate the IFDCA and the food-labeling requirements incorporated into Illinois law.

**Reasonable Consumers Would Be Misled By Defendant's Deception.**

51. Reasonable consumers have no reason to look at the back label of the Products when presented with the conspicuous representation on the front of the package that the Products are "0g Total Sugar." Consumers are not expected to look beyond misleading representations on the front of the package to discover that those representations are false.

52. Defendant's deception is especially misleading because a consumer who reviews the Nutrition Facts table would encounter a 0g Total Sugars disclosure, even though the Product contains eight to 10 grams of allulose (a sugar) per serving—at least twenty times the 0.5-gram cutoff for a "0g Total Sugars" claim.

53. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew the Representations Were False**

54. Defendant knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a sugar; (c) its labels represented that the Products contained no sugar; (d) reasonable consumers would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the Representations enabled Defendant to charge a premium for Products containing sugar.

55. Defendant, as the marketer and distributor of the Products, controlled, or participated in, making the Representations on the Products' labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite its knowledge that consumers reasonably rely on the Representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**Defendant's 0g Total Sugars Claims Injured Plaintiff and the Class**

56. Defendant concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that the predominant ingredient is a sugar; (c) the fact that each serving contains five or ten grams of allulose, depending on the variant—at least twenty times the 0.5-gram cutoff; (d) the fact that the Products

are not sugar free; and (e) the fact that the Products are misbranded under federal and Illinois law when sold bearing the Representations.

57. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendant warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendant created; (f) purchased Products that Plaintiff and members of the Classes did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy only products represented to contain none; and (h) with respect to Plaintiff and members of the Illinois Subclass, purchased misbranded Products that could not lawfully have been sold in Illinois.

58. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

59. Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following classes:

**Illinois Class**:

> All persons in Illinois who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use ("Illinois Class").

**Multi-State Consumer Protection Class**:

> All persons in the States of Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who, during the maximum period of time

permitted by law, purchased Defendant's Products for their personal use ("Multi-State Class").[14]

60. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

61. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

62. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

63. **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

64. **Commonality:** Plaintiff and the Class Members share a community of interests in

---

[14] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*). Plaintiff has standing to represent the proposed Multi-State Subclass. Any challenge brought by Defendant regarding Plaintiff's standing to represent any proposed class should be deferred to the class certification stage because that is what Illinois law requires.

that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether allulose is a sugar;

b. Whether the Products were "0g Total Sugars";

c. Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

d. Whether Defendant's representations and warranties were material;

e. Whether the Products are misbranded under federal law and, with respect to the Illinois Subclass, Illinois law;

f. Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

g. Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

h. Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

i. Whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

65. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

66. **Adequacy of Representation:** Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case

as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

67. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

68. **Superiority of Class Action:** Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

69. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

70. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

71. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

72. Unless a Class-wide injunction is issued, Defendant may continue to act

unlawfully as set forth in this Complaint.

73. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure Rule 23.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF STATE CONSUMER FRAUD ACTS
### (On behalf of Plaintiff and the Multi-State Consumer Protection Class[15])

74. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this Count on behalf of herself and the Multi-State Consumer Protection Class against Defendant.

76. The Consumer Fraud Acts of the States in the Multi-State Consumer Protection Class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a. Illinois (815 ILCS 505/1, *et seq.*);

b. Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);

c. Michigan (Mich. Comp. Laws § 445.901, *et seq.*);

d. Minnesota (Minn. Stat. § 325F.67, *et seq.*);

e. Missouri (Mo. Rev. Stat. § 407.010, *et seq.*);

f. New Jersey (N.J. Stat. § 56:8-1, *et seq.*);

g. New York (N.Y. Gen. Bus. Law §§ 349 and 350); and

h. Washington (Wash. Rev. Code § 19.86.010, *et seq.*)

[15] Plaintiff reserves the right to amend this list of states after discovery.

77. These statutes are materially similar and prohibit deceptive or unfair conduct in the course of business.

78. Defendant's uniform labeling and marketing Representation of the Product were deceptive and materially misleading.

79. Given Defendant's leading position in the consumer products and dietary supplement industry and its growing popularity as an established and trustworthy national (even international) brand, Plaintiff and reasonable consumers trusted and relied on Defendant's Representations, sustaining damages in an amount to be proven at trial.

80. In addition, Defendant's conduct showed malice, motive, and/or reckless disregard for the truth, so an award of punitive damages is appropriate.

81. Plaintiff and the other Members of the Multi-State Consumer Protection Class have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Consumer Protection Class because Plaintiff and Members of the Multi-State Consumer Protection Class have suffered an injury in fact and lost money because of Defendant's actions set forth herein.

**COUNT II**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, et seq. ("ICFA")**
**(On behalf of Plaintiff and the Illinois Class)**

82. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

83. Plaintiff brings this cause of action on behalf of herself and the Illinois Class Members against Defendant.

84. Plaintiff and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

85. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

86. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

87. Plaintiff and the proposed Class are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

88. The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

89. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

90. Defendant's conduct as alleged constitutes unfair and deceptive acts and practices violating the ICFA. Defendant engaged in deceptive marketing by misrepresenting and omitting material facts regarding the sugar amount in the Product. The Representations were likely to mislead a reasonable consumer.

91. Plaintiff and the other Illinois Class Members reasonably relied upon Defendant's Representation, labeling, and omissions alleged herein regarding the Products 0g Total Sugars claims.

92. Defendant's misconduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, violating 815 ILCS 505/1, et seq, by representing that the Product has characteristics or benefits that its does

not have.[16] Defendant also did not intend to sell the products as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

93. Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(3).

94. Defendant's uniform marketing claims were deceptive and materially misleading. Defendant named and labeled the Products in a way that would most impact consumer choices and gain market share. Defendant knew that consumers purchasing the Products would reasonably understand the "0g Total sugar" representations to mean that the Products contained no sugar

95. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Class Members have suffered ascertainable money losses caused by Defendant's 0g Total Sugars Representations. Had they been aware of the true nature of the Cereals, Plaintiff and Class Members would have paid less for the Magic Spoon Cereals or would not have purchased them.

96. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Class Members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Illinois Class)**

97. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

98. Plaintiff brings this Count on behalf of herself and the Illinois Class.

[16] *See,* 815 ILCS § 505/2; 815 ILCS § 510/2(7).

99. This claim is brought under the law of the State of Illinois.

100. This claim is brought in the alternative to the other Counts. Illinois law and the Federal Rules of Civil Procedure allow Plaintiff to plead alternative theories.

101. Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Magic Spoon Cereals while misrepresenting and omitting material facts, including by making the labeling Representation alleged herein.

102. As a direct result of Defendant's deceptive conduct, it obtained unjust and inequitable benefits at the expense of Plaintiff and the Class members. Defendant's conduct violated fundamental principles of justice, equity, and good conscience. Accordingly, it would be inequitable for Defendant to retain the revenues derived from sales induced by its misleading Representations.

103. Plaintiff and the Class members conferred substantial financial benefits upon Defendant, through retail purchases of the Magic Spoon Cereals, which materially differed from the representations made by Defendant.

104. Plaintiff and the Class members seek the imposition of a constructive trust over the profits improperly obtained by Defendant, from which Plaintiff and the Class may obtain restitution and disgorgement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

a. Certifying the Illinois and Multi-State Classes pursuant to Federal Rule 23, and appointing Plaintiff and his counsel to represent the Classes;

b. Declaring that Defendant's conduct constitutes:

i. A violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.);

ii. Violations of substantially similar consumer protection statutes of other states;

iii. Unjust enrichment;

c. Awarding all actual, compensatory, statutory, and punitive damages to which Plaintiff and Class members are entitled;

d. Awarding equitable relief, including restitution and/or disgorgement of Defendant's revenues obtained by means of any wrongful act or practice;

e. Awarding reasonable attorneys' fees and costs, including expert witness fees and expenses as permitted by law;

f. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

g. Granting such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: September 10, 2026

Respectfully Submitted,

*/s/ Kevin Laukaitis*
**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce DeLeon
Suite 205 #10518
San Juan, PR 00907
Phone: (215) 559-6072
Email: *klaukaitis@laukaitislaw.com*

*Attorneys for Plaintiff*
*and the Putative Classes*